23-SW-03074-WJE

**AFFIDAVIT
OF
SHERI J. KAUFFMAN
TASK FORCE OFFICER
BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES**

I, Sheri J. Kauffman, being first duly sworn, do hereby depose and state that:

## INTRODUCTION

1. I am a Task Force Officer (TFO) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Jefferson City, Missouri Satellite Office. I have been a Task Force Officer with the ATF since December 2019. As a Task Force Officer with the ATF, I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and am empowered to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 3051. While with the ATF, I have participated in firearm investigations involving, among other crimes, the possession of firearms by felons and other prohibited persons, in violation of Title 18, United States Code, Section 922(g) and 924 (a)(2) (hereinafter referred to as "Target Offenses").

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for a search warrant for historical information associated with a Facebook account with ID **100001413325512 with vanity name "Kenneth Munson (Taz)"** that, as described below, is believed to be used by Kenneth MUNSON, and is stored at premises owned, maintained, controlled, or operated by Meta, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. Specifically, the information to be searched is described in the following paragraphs and in

Attachment A, and the particular things to be seized are described in Attachment B.

3. The statements contained in this affidavit are based on information I learned through my personal knowledge, investigative reports from other investigators familiar with this investigation, and conversations with investigators familiar with this investigation. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violation of Title 18, United States Code, Section 922(g) (being a felon in possession of firearms) by Kenneth MUNSON will be found in the account described in Attachment A.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the Facebook account with ID **100001413325512 with vanity name "Kenneth Munson (Taz)"** contains evidence, fruits, and instrumentalities of violations of 18 United Stated Code, Section 922(g) (possession of firearms and ammunition after a prior felony) (the "Target Offense"). This Target Offense has been committed, are being committed and/or will be committed by Kenneth MUNSON and others, known and unknown. Accordingly, there is probable cause to search the property described in Attachment A and seize information and items described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant to Facebook because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a "district court of the United States that has jurisdiction over the offense being investigated" 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND OF THE INVESTIGATION

6. The Government, including but not limited to the ATF, is conducting a criminal investigation of Kenneth MUNSON and others, known and unknown, regarding possible violations of 18 U.S.C. § 922(g)(1).

7. MUNSON is a previously convicted felon in the state of Missouri. MUNSON's felony convictions include Forgery 1st Degree (St. Louis, Missouri, 2004); Distribution/Delivery of a Controlled Substance (St. Louis, Missouri, 2010); Child Abuse/Neglect (Clayton, Missouri, 2015); Driving While Suspended/Revoked (Cole County, Missouri, 2022); and Unlawful Use of a Weapon (Cole County, Missouri, 2022).

8. On May 21, 2023, Officers with the Jefferson City Police Department ("JCPD") investigated a weapons offense at 1011 Elizabeth Street, Jefferson City, Missouri, in Cole County. JCPD officers observed Kenneth MUNSON in the area as they arrived on scene and witnessed Kenneth MUNSON wearing a sports jersey and walking into 1011 Elizabeth Street, Apartment B, Jefferson City, Missouri. JCPD Sergeant Bickel and JCPD Officer Schnakenberg approached Kenneth MUNSON's apartment and observed two spent rounds of 9-milimeter ammunition. JCPD Sergeant Bickel contacted Kenneth MUNSON. Kenneth MUNSON told the officer that he had witnessed several subjects outside of his apartment and heard shots fired. Kenneth MUNSON told the officers he instructed the subjects to leave the area and they complied.

9. JCPD Sergeant Bickel located a surveillance camera in the area, which faced the courtyard and front area of Kenneth MUNSON's apartment. JCPD Sergeant Bickel informed Kenneth MUNSON that he planned on reviewing the surveillance footage. At approximately 1430 hours, JCPD Officer Davis responded to the area and connected to the Jefferson City Housing Authority surveillance camera to review the weapons offense. JCPD Officer Davis observed a

male wearing a sports jersey, glasses and had his hair styled in corn rows. JCPD Officer Davis observed the male exiting 1011 Elizabeth Street, Apartment B and firing a gun into the air then reentering the same apartment. While JCPD Officer Davis was watching the surveillance footage, he observed Kenneth MUNSON exiting his apartment. JCPD Officer Davis observed Kenneth MUNSON was the same build, wearing similar glasses and had a similar hairstyle as the suspect from the shooting. JCPD Officer Davis contacted Kenneth MUNSON and showed him a still shot form the surveillance footage. Kenneth MUNSON identified himself as the subject in the still-shot image. JCPD Officer Davis then showed MUNSON the surveillance footage of the shooting. JCPD Officer Davis stated Kenneth MUNSON admitted to firing the gun because he wanted to see if the firearm worked prior to purchasing the firearm. Kenneth MUNSON also admitted to consuming alcohol prior to shooting the gun.

10. JCPD Communications confirmed Kenneth MUNSON was a convicted felon and prohibited from possessing firearms. JCPD Officer Davis placed MUNSON under arrest. JCPD Officer Davis asked Kenneth MUNSON for consent to search 1011 Elizabeth Street, Apartment B for the firearm and he denied consent to search. JCPD Officer Nichols remained at the residence, while JCPD Officer Davis obtained a search warrant for the residence. Kenneth MUNSON's daughter, Janice Munson was contacted on scene, and she identified the room at the bottom of the staircase as the one belonging to Kenneth MUNSON.

11. JCPD Officer Davis obtained and executed the search warrant on Kenneth MUNSON's residence. JCPD Officer Nichols assisted in searching the residence. JCPD Officer Nichols searched Kenneth MUNSON's bedroom and located evidence. JCPD Officer Nichols located the firearm in the second drawer of the dresser located near the bed. JCPD Officer Davis observed the firearm was similar to the firearm observed on the surveillance footage. JCPD Officer

4

Nichols advised the firearm had one round of 9-milimeter ammunition in the chamber and a magazine equipped with 22 additional rounds of ammunition. JCPD Officer Nichols also located several documents belonging to Kenneth MUNSON and the sports jersey seen in the surveillance video.

12. TFO Kauffman observed the firearm was a TNW Inc. model ASR, 9mm caliber pistol bearing serial number M1445. TFO Kauffman test fired MUNSON's firearm and obtained two spent shell casings. The test-fired shell casings and scene shell casings were submitted for further examination National Integrated Ballistics Information Network (NIBIN). The ATF NIBIN correlation center confirmed the test-fired shell casings matched spent shell casings that were submitted from the weapons offense. The NIBIN results showed the scene shell casings and test-fired shell casings were likely fired from the same firearm.

13. On October 25, 2023, TFO Kauffman was contacted by JCPD Officer Gash regarding a picture on Kenneth MUNSON's Meta Inc. ("Facebook") page. TFO Kauffman located Kenneth MUNSON's Meta Inc. ("Facebook") page under the account as kenneth.munson1, ID number 100001413325512, with vanity name "Kenneth Munson (Taz)." TFO Kauffman observed a photograph with Kenneth MUNSON holding a firearm that appears to be a PC Carbine with a Ruger magazine, which was posted on September 25, 2023. TFO Kauffman submitted a preservation request to Meta Inc. ("Facebook") on 10/25/2023.

**INFORMATION ABOUT META INC. ("Facebook")**

14. Meta Inc. owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Meta Inc. allows its users to establish accounts with Meta Inc., formerly known as Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and

sometimes with the general public.

15. Meta Inc. asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Meta Inc. ("Facebook") passwords, Meta Inc. ("Facebook") security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Meta Inc. ("Facebook") also assigns a user identification number to each account.

16. Meta Inc. ("Facebook") users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Meta Inc. ("Facebook") assigns a group identification number to each group. A Meta Inc. ("Facebook") user can also connect directly with individual Meta Inc. ("Facebook") users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Meta Inc. ("Facebook") and can exchange communications or view information about each other. Each Meta Inc. ("Facebook") user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

17. Meta Inc. ("Facebook") users can select different levels of privacy for the communications and information associated with their Meta Inc. ("Facebook") accounts. By adjusting these privacy settings, a Meta Inc. ("Facebook") user can make information available only to himself or herself, to particular Meta Inc. ("Facebook") users, or to anyone with access to the Internet, including people who are not Facebook users. A Meta Inc. ("Facebook") user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Meta

Inc. ("Facebook") accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Meta Inc. ("Facebook"). Depending on the user's privacy settings, Meta Inc. ("Facebook") may also obtain and store the physical location of the user's device(s) as they interact with the Facebook service on those device(s).

18. Meta Inc. ("Facebook") users can create profiles that include photographs, lists of personal interests, and other information. Meta Inc. ("Facebook") users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Meta Inc. ("Facebook") users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

19. Meta Inc. ("Facebook") allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when he or she uploaded the photo or video. It also provides users the ability to "tag" (*i.e.*, label) other Meta Inc. ("Facebook") users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Meta Inc. ("Facebook") purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

20. Meta Inc. ("Facebook") users can exchange private messages on Facebook with

7

Case 2:23-sw-03074-WJE    Document 1-1    Filed 10/30/23    Page 7 of 11

other users using Facebook Messenger. Meta Inc. ("Facebook") users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. These chat communications are stored in the chat history for the account. Meta Inc. ("Facebook") also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

21. If a Meta Inc. ("Facebook") user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

22. Meta Inc. ("Facebook") has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

23. Meta Inc. ("Facebook") has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

24. Each Meta Inc. ("Facebook") account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

25. Meta Inc. ("Facebook") also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

26. In addition to the applications described above, Meta Inc. ("Facebook") also

provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

27. Meta Inc. ("Facebook") also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

28. Social networking providers like Meta Inc. ("Facebook") typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

29. As explained herein, information stored in connection with a Meta Inc. ("Facebook") account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, IP log, stored electronic communications, and other data retained by Meta Inc.

("Facebook"), can indicate who has used or controlled the Meta Inc. ("Facebook") account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Meta Inc. ("Facebook") account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the IP addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

30. Therefore, the computers of Meta Inc. ("Facebook") are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information,

other account information and location information.

31. I anticipate executing the warrant to Meta Inc. ("Facebook") under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

32. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. I therefore request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Facebook account with ID **100001413325512 with vanity name "Kenneth Munson (Taz)"** outside of daytime hours.

Respectfully submitted,

*[signature]*

**Sheri J. Kauffman**
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to and subscribed via telephone, on this, the 30th day of October 2023.

*[signature]*

**Willie J. Epps, Jr.**
United States Magistrate Judge